**UNITED STATES of America,**
**Appellee,**

v.

**Louis IRWIN, Defendant-Appellant.**

**No. 33, Docket 29703.**

United States Court of Appeals
Second Circuit.

Argued Sept. 21, 1965.

Decided Dec. 10, 1965.

Milton R. Wessel, New York City (Louis W. Bookhein, Jr., and Kaye, Scholer, Fierman, Hays & Handler, New York City, on the brief), for defendant-appellant.

Andrew J. Maloney, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., David M. Dorsen and John E. Sprizzo; Asst. U. S. Attys., Southern District of New York, on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The appellant, Irwin, a certified public accountant since 1943, was indicted on December 1, 1964 on three counts: the first charged conspiracy with one Jeanne Lupesco, an employee of the Internal Revenue Service, to violate Title 18

U.S.C. §§ 201(b) and (f);[1] the second charged a violation of Title 18 U.S.C. § 201(b), alleging that Irwin had given his co-defendant Lupesco a sum of money with intent to influence her official actions relating to audits of the income tax returns of several of Irwin's clients; and the third charged him with a violation of Title 18 U.S.C. § 201(f), alleging that he had given Lupesco, as a public official, $400 for or because of her auditing the income tax returns of several of Irwin's clients. The court dismissed the first, or conspiracy count, at the close of the Government's case. The jury acquitted Irwin on the second count and convicted him on the third. The court entered judgment of conviction on the third count and sentenced Irwin to one year in prison; from this judgment Irwin appeals. We affirm the judgment below.

His principal ground of appeal is that the statute, § 201(f), under which he was convicted, is unconstitutionally vague on its face. He also raises questions concerning the admissibility of certain evidence, disclosure of grand jury minutes and entrapment.

The portions of Title 18 U.S.C. § 201 (f), pertinent to this case, read as follows:

> "Whoever * * * directly or indirectly gives, offers, or promises anything of value to any public of-

ficial * * * for or because of any official act performed or to be performed by such public official . * * *."

§ 201(a), in relevant part, defines a public official as " * * * [an] employee * * * acting for or on behalf of the United States, or any department, agency or branch of Government thereof * * * in any official function, under or by authority of any such department, agency, or branch of Government * * * " and defines an official act as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit."

While the legislative history of this section is not illuminating, it is clear that in passing it in 1962, Congress consolidated and to some extent re-wrote several sections of Title 18, dealing with bribery and corruption, and also added some new provisions to buttress and make more effective the prevention of this kind of public wrong. Many of the provisions were placed in § 201. Of these subsections (b) through (e) define offenses which include the specific intent to influence or induce an official or witness, or, in the case of the official or witness permitting himself to be influenced or induced, as an essential ele-

---

1. § 201(b) and (f) read as follows:
   (b) "Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—
     (1) to influence any official act; or
     (2) to influence such public official or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

   (3) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of his lawful duty, or"
   
   * * * * *
   
   (f) "Whoever, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official:
   
   * * * * *
   
   Shall be fined * * * [etc.]."

ment. Subsections (f) through (i), however, define offenses concerning which there is no mention of intent to influence or induce. The penalties for the first group are a maximum fine of $20,000 or three times the money equivalent of the thing of value, whichever is greater, and a maximum imprisonment for fifteen years, or both; while the penalties for the second group are a maximum of $10,000 fine or two years imprisonment or both.

■ The appellant's assertion that the provisions of § 201(f) are vague and uncertain are without merit. It is apparent from the language of the subsection that what Congress had in mind was to prohibit an individual, dealing with a Government employee in the course of his official duties, from giving the employee additional compensation or a tip or gratuity for or because of an official act already done or about to be done.

■■ The awarding of gifts thus related to an employee's official acts is an evil in itself, even though the donor does not corruptly intend to influence the employee's official acts, because it tends, subtly or otherwise, to bring about preferential treatment by Government officials or employees, consciously or unconsciously, for those who give gifts as distinguished from those who do not. The preference may concern nothing more than fixing the time for a hearing or giving unusually prompt consideration to the application of a donor while earlier applications of non-donors are made to wait, even though there is no evidence that the donor sought the particular preference. Moreover, the behavior prohibited by § 201(f) embraces those cases in which all of the essential elements of the bribery offense (corrupt giving) stated in § 201(b) are present except for the element of specific intent to influence an official act or induce a public official to do or omit to do an act in violation of his lawful duty. The iniquity of the procuring of public officials, be it intentional or unintentional, is so fatally destructive to good government that a statute designed to remove the temptation for a public official to give preferment to one member of the public over another, by prohibiting all gifts "for or because of any official act," is a reasonable and proper means of insuring the integrity, fairness and impartiality of the administration of the law. It is clearly within the power of Congress to enact such a statute.

■ The appellant seeks to prove his point by suggesting hypothetical cases taken from the peripheral areas of the statute's scope; but he can derive no assistance from that source. He must show that, as applied to his own case, the statute was so vague and uncertain that he was not presented with an "ascertainable standard of guilt." Winters v. People of State of New York, 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840 (1948). The facts of the present case bring it squarely within the provisions of § 201 (f), construed in the light of the definitions in § 201(a). The statute furnished adequate warning to anyone of ordinary intelligence that the kind of conduct embarked upon by the appellant would constitute an offense. § 201(f) is not

"  *  *  *  a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application  *  *  *."

Connally v. General Construction Co., 269 U.S. 385, at 391, 46 S.Ct. 126, at 127, 70 L.Ed. 322 (1926). The appellant was not "required at peril of life, liberty or property to speculate as to the meaning of penal statutes." Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). As long as the statute is clear as to the appellant's behavior, we need not be concerned that at the outer fringes of the statute's bounds there may be close or difficult cases.

"  *  *  *  [O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might

also be taken as applying to other persons or other situations in which its application might be unconstitutional."

United States v. Raines, 362 U.S. 17, at 21, 80 S.Ct. 519, at 522, 4 L.Ed.2d 524 (1960). The appellant argues that the words in the statute "for or because of" are obscure and confusing in relation to the element of intent. He asserts that they may mean either that the Government must prove a specific intent to influence as in § 201(b), or that they refer to an intent "less than" the intent stated in § 201(b) or that they mean no element of intent is required at all.

The intent to influence, accompanying the corrupt giving or accepting of something of value, is an essential element of § 201(b, c, d, e) which Congress dealt with in separate subsections, and for the violation of each of which it attached severe penalties. No similar provisions concerning corrupt giving and specific intent to influence or induce were included in § 201(f, g, h, i), and the penalty provided for a violation of any of those subsections was much less severe. Obviously Congress made a distinction between the two groups of subsections and purposely omitted from the latter group the description of the specific intent which was an essential element of the former.[2]

This does not mean, however, that intent is not an essential element of the offense set forth in § 201(f). Although the specific intent of subsections (b) through (e) are not required, nevertheless, to convict an accused under subsections (f) through (i), it is necessary that the Government prove that he committed the act prohibited knowingly and purposefully and not through accident, misunderstanding, inadvertence or other innocent reasons.

"Ordinarily one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. That awareness is all that is meant by the mens rea, the 'criminal intent,' necessary to guilt, as distinct from the additional specific intent required in certain instances * * *."

United States v. Crimmins, 123 F.2d 271, at 272 (2d Cir. 1941). See also United States v. Rappaport, 292 F.2d 261 (3d Cir. 1961), cert. denied 368 U.S. 827, 82 S.Ct. 48, 7 L.Ed.2d 31 (1961).

■ In addition, subsection (f) requires that the Government, to convict an accused, must prove that the purpose which he had in mind in making or promising to make a gift to a public official was to give additional compensation or a reward, gratuity or similar favor, by reason of some "official act performed or to be performed by such public official." It is not necessary for the Government to show that the gift caused or prompted or in any way affected the happening of the official act or had anything to do with its nature or extent or the manner or means by which it was performed. The making of the gift "for or because of any official act" limits the prohibition against the act of making a gift to a public official to those which are accompanied by and are made with this particular state of mind, design or purpose, which is the essence of intent. Whether this is regarded as a specific intent or as a limitation on the acts that are within the purview of the subsection is of no consequence. The state of mind with which the act is done is an essential element of the offense which the Government must prove.

■ The appellant complains that the trial judge did not properly or adequately instruct the jury[3] on the definition of

---

2. Because Congress did manifest an awareness of the element of intent, and because it made what appears to us to have been a deliberate choice to omit any specific intent as an element of the offense under § 201(f), we think that Morissette

v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) is distinguishable.

3. Judge Murphy instructed the jury on intent and state of mind as follows:
"In the second crime that is charged

criminal intent and its presence or absence as an element of the offense charged under § 201(f). We are of the opinion, however, that the jury was fully and correctly charged on the issue of intent including the meaning and application of the phrase, "for or because of any official act."

The appellant claims reversible error in certain rulings by the trial court on the admissibility of evidence. His counsel sought to cross-examine Lupesco and other Government witnesses on the subject of other instances of bribery, for which they had been indicted, for the purpose of impeaching their credibility. The trial judge allowed all of the witnesses to testify as to other bribes which they had accepted, but sustained objections to questions concerning the details of criminal acts committed by them which were then the subject of pending indictments. These rulings were within the court's discretion, which was not erroneously exercised. United States v. Owens, 263 F.2d 720 (2d Cir. 1959). In the course of the trial the appellant sought to introduce evidence showing that the returns of the taxpayers he represented, in the instances involved in this prosecution, were proper, as filed. The purpose of the offer was to show that he had no motive to make the payments other than to meet the demands of the agents at the Internal Revenue Service. This evidence was entirely irrelevant to the offense charged under § 201 (f) and was properly excluded.

The appellant also complains that the Government introduced only a part of his grand jury testimony, and that the denial of access to the remainder constituted reversible error. It is generally true that "fair dealing" requires that the defense have some access to grand jury minutes after the prosecution puts them into evidence. "[T]he prosecution having used the former testimony, the defendants were entitled to put in such other parts as threw light upon it." United States v. Cotter, 60 F.2d 689, at 692 (2d Cir. 1932), cert. denied 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575; see also, United States v. Dardi, 330 F.2d 316, 334–335 (2d Cir. 1964). However, no objection was made to the introduction of the grand jury minutes put in by the Government, and the appellant never moved to have the remaining minutes produced. Under these circumstances there was no affirmative duty on the part of the Government to produce them. United States v. Cotter, supra, 60 F.2d at 692, particularly in view of the absence of any showing of damage or prejudice to the accused. Essentially all of the testimony which the appellant gave to the grand jury consisted of his claims of privilege against self-incrimination. There was virtually no substantive testimony given. We are satisfied that there was no error in this regard.

We do not think that there was any impropriety in the fact that the United States Attorney called Irwin to appear before the grand jury. The appellant urges that his grand jury testi-

[the third count] the elements that the government must prove are substantially different. Under this second charge [the third count] the government must prove beyond a reasonable doubt that on the 17th of June the defendant wilfully and knowingly, that is, intentionally as distinguished from inadvertently or negligently, gave $400 which he was not required by law to give to Jeanne Lupesco for and because of official acts performed or to be performed by her, namely, the office audit examinations of the returns in question. In short, this crime does not require the evil intent or the corrupt intent that the first crime requires, nor does it have to have as a purpose the intent to influence the public official but rather to have as a reason for the giving of the money the performance by the recipient of some official act, namely, the audit examination of the returns in question.

Thus, you are called upon to determine what was in the defendant's mind and the purpose which motivated him in his course of conduct. Direct proof is rarely available to establish intent. Like any other fact, it may be proved by circumstantial evidence."

mony should have been suppressed because he was a "target" of the investigation and "his testimony was not freely given, all things considered." It is clear from the minutes of the testimony given by Irwin on January 31, 1964 that he was made fully aware of his constitutional rights to remain silent and to consult with counsel. Furthermore, he was clearly told that he was a subject of the investigation and "that it is highly probable that this Grand Jury * * * may vote an indictment charging you with * * * violations" of 18 U.S.C. § 201. In this circumstance we must, as we did in United States v. Winter, 348 F.2d 204 (2d Cir. 1965) reject the contention that appellant's rights were violated when he was called to testify. To find otherwise in a case like this, where appellant was fully apprised of his rights, we would "denude that ancient body of a substantial right of inquiry." United States v. Winter, supra, at 207.

▮ The appellant also claims that he was entrapped because, even after the Government learned that its Internal Revenue Service employee, Jeanne Lupesco, was illicitly engaged in taking bribes to influence her official acts, it did nothing to stop her so that she, unaware that she had been detected, was still in a position to accept unlawful payments from the appellant. This theory of entrapment cannot be supported in reason or authority. The policy underlying the defense of entrapment is to prevent the Government from enticing an otherwise innocent party into the commission of a crime which, absent the inducement by the Government agent, would never have been committed. It is not affirmatively to remove temptation and opportunity from persons already predisposed to commit an offense. See, Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

"The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. * * *

However, the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials."

Sherman v. United States, 356 U.S. 369, at 372, 78 S.Ct. 819, at 820, 2 L.Ed.2d 848 (1958). See also, Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). This case is very similar to the situation which was present in United States v. Gosser, 339 F.2d 102 (6th Cir. 1964), cert. denied 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed. 2d 66 (1965). There too an Internal Revenue Service employee, who had been detected by the Service, was permitted to remain at work and continue her illegal activities contrary to the provision of 26 U.S.C. § 7214. The conviction of Gosser was nevertheless affirmed. There was in that case, as there is in the present case, some evidence that the defendant had committed violations of the law even prior to the discovery by the Government of its dishonest employee. In both of these cases the Government did not even take affirmative action to "afford opportunities or facilities" but simply refrained from foreclosing an already existing opportunity.

▮ Judge Murphy was entirely justified in concluding that there was no evidence of entrapment and he committed no error in refusing to submit that issue to the jury. United States v. Kabot, 295 F.2d 848, at 854–855 (2d Cir. 1961), cert. denied 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed. 2d 550 (1962); see United States v. Winfield, 341 F.2d 70 (2d Cir. 1965) (appeal pending); United States v. Romano, 278 F.2d 202 (2d Cir. 1960); United States v. Gosser, supra; cf., Sears v. United States, 343 F.2d 139, 141 (5th Cir. 1965).

The remaining points raised by the appellant on his appeal have no merit and call for no discussion. The judgment of conviction is affirmed.