**UNITED STATES of America,
Appellee,**

v.

**Harry F. SEUSS, Defendant, Appellant.**

**Nos. 72–1226, 72–1227.**

United States Court of Appeals,
First Circuit.

Heard Dec. 11, 1972.

Decided Feb. 16, 1973.

Certiorari Denied June 4, 1973.

See 93 S.Ct. 2751.

and Robert D. City, Boston, Mass., were on brief, for appellant.

James B. Krasnoo, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALD-RICH and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

Defendant, a meat inspector for the United States Department of Agriculture, was convicted on two counts of accepting a gift, money, or other thing of value from a person, firm, or corporation engaged in interstate commerce, under 21 U.S.C. § 90, now 21 U.S.C. § 622,[1] and one count of conspiring to defraud the government of the honest, conscientious, and valuable performance of meat inspection functions, under 18 U.S.C. § 371. He attacks the statute as vague, the conviction as invalid for lack of proof that he accepted a thing of value from a statutorily defined offeror, and the admission of evidence with regard to the conspiracy count of 49 acts which occurred before the five-year period prior to indictment subject to scrutiny under the statute of limitations, 18 U.S. C. § 3282.

The evidence revealed a practice on the part of Colonial Provision Co., Inc., a meat processing company engaged in interstate commerce, to give meat inspectors, including defendant, meat products and other things of value on request. A quality control analyst of Colonial testified that on the two occasions made the subject of the substantive counts he personally prepared an inventory document with defendant's initials on it and ordered and delivered food to defendant. He also stated that he and defendant violated federal sampling procedures on several occasions. Both the plant superintendent and the executive vice-president testified to the existence of the company policy and

---

A. David Mazzone, Boston, Mass., with whom Donahue & Donahue, Richard K. Donahue, Lowell, Mass., Moulton, Looney, Mazzone, Falk & Markham

1. To avoid confusion in subsequent cases, we will refer to this statute by its present designation, 21 U.S.C. § 622, although the renumbering and the two minor amendments to this section, see n. 5 *infra*, did not become effective until after the dates of the events in this case.

their authorization and personal approval, respectively, of the particular transactions involved. After defense motions to dismiss and for acquittal were denied, the case went to the jury which convicted defendant on two of the three substantive counts submitted to it and on the conspiracy count. The defendant appeals from the convictions and the concurrent sentences of two years imprisonment and suspended fines of $1,000 imposed by the court.

Appellant raises a sophisticated vagueness claim. He admits that the words of the statute are perfectly clear —receiving a thing of value from a person, firm, or corporation engaged in interstate commerce. But he claims that they are so broad—e. g., covering birthday gifts hand-delivered by a mother who lives in New Hampshire to her son living in Massachusetts and promotional mailings that include free pencils, calendars or the like—that Congress could not have intended to prohibit all matters literally covered. Thus, he concludes, an inspector has no way of knowing exactly which receipts are banned and which permissible. The government counters that the statute is generally clear, that there can be no doubt that it covers one who, like defendant, is a meat inspector who accepts meat products from a meat processing company, and that even if the gift-bearing interstate-travelling mother is arguably covered, one as to whom the statute clearly applies may not challenge the statute's vagueness as to other, marginal cases.[2]

Though the defendant challenges the statute for vagueness, *see* Goguen v. Smith, 471 F.2d 88 (1st Cir. 1972), we find that a reasonable, if not obvious, construction of the statute avoids any possible vagueness problems which are alleged to inhere in its overbreath. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

Part 3 of the statute,[3] under which defendant was convicted, provides:

"[A]ny inspector, deputy inspector, chief inspector, or other officer or employee of the United States authorized to perform any of the duties prescribed by this subchapter [now subchapter I of Chapter 12 (Meat Inspection) of Title 21] . . . who shall receive or accept from any person, firm, or corporation engaged in interstate or foreign commerce any gift, money, or other thing of value, given with any purpose or intent whatsoever, shall be deemed guilty of a felony . . . ." 21 U.S.C. § 90, now 21 U.S.C. § 622.

---

2. The government also argues that the defendant may not raise the issue because he failed to raise it before the trial court, by either a motion to dismiss or as a ground for his motion for acquittal. However, Fed.R.Crim.P. 12(b)(2) provides that "Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding." The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional. 8 Moore's Federal Practice ¶ 12.03 [2]. That objection may be raised for the first time on appeal. Carlson v. United States, 296 F.2d 909 (9th Cir. 1961).

3. Although the statute is written as one sentence, the parties have properly subdivided it for purposes of analysis into three, informally designated parts. Part 1 proscribes the giving or offering by any person, firm, or corporation, or any agent or employee of such, of money or other thing of value to an official authorized to perform the duties prescribed by the Meat Inspection Act, with "intent to influence" that official "in the discharge of any duty" under the Act. Part 2 is a parallel provision prohibiting the acceptance by such official of a thing of value from a person, firm, or corporation, or officers, agents, or employees thereof, "given with intent to influence his official action". Part 3, in contrast, specifically eliminates all intent requirements, and limits the covered donors to any person, firm, or corporation engaged in interstate or foreign commerce. *See* discussion *infra*. The indictments, which used the phrase regarding engagement in commerce and failed to allege any intent, obviously were intended to charge a violation of Part 3.

We have found no judicial construction of this provision, which has been on the books for over half a century, but we draw support for our interpretation from the legislative purpose, the regulations promulgated by the Department of Agriculture to govern "employee responsibilities and conduct," 7 C.F.R. §§ 0.-735–1 et seq., and the general bribery statute for federal officials, 18 U.S.C. § 201.

First, and most significantly, we think it clear that the statute prohibits the officials authorized to perform the prescribed inspection duties from accepting things of value *in connection with or arising out of the performance of their official duties.*[4] This common sense interpretation stems first from consideration of the legislative purpose. The Meat Inspection Act of 1907, 34 Stat. 1264, passed in response to the unsanitary conditions in the meat packing industry, revealed in Upton Sinclair's expose, "The Jungle", was designed to insure that meat products sold to the consumer be clean and safe. A system of federal inspection was created and the inspectors subjected to strict regulation lest their corruption—or the appearance of it—undermine the quality of meat or the public's trust in their supervision of meat quality. The statute's amendment in 1967, which expanded the scope and severity of federal regulation, did not affect, except for two minor, technical changes,[5] the instant criminal provision, or its purpose of preventing corruption of the regulators. P.L. 90–201, 81 Stat. 584, 1967 U.S.Code Cong. & Admin. News, pp. 636–658, 2188–2213. Although food purity statutes must be read broadly to protect the public from adulterated food, United States v. Wiesenfeld Warehouse Co., 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964); United States v. Cassaro, Inc., 443 F.2d 153 (1st Cir. 1971), and to insure public confidence in governmental regulation, they need not be stretched to cover more than their obvious purpose. Congress could not have thought that inspectors would be less rigorous in their scrutiny, nor the public less certain of their diligence, because they received birthday gifts from members of their family.

This self-evident construction of Congressional intent is reflected in the Department's personnel regulation regarding "Gifts, entertainment and favors", 7 C.F.R. § 0.735–12. The regulation first proscribes broadly the receipt by an employee of any thing of monetary value from one who (1) "[h]as, or is seeking to obtain, contractual or other . . . financial relations with the Department", (2) "[c]onducts operations or activities that are regulated by the Department" or (3) "[h]as interests that may be substantially affected by the performance or nonperformance of [the employee's] duty." Subsection (b) of the regulation then explains that this broad prophylactic rule shall not be interpreted to prohibit:

"(1) Acceptance of any of the usual courtesies in an obvious family or personal relationship (such as those between the employee and his parents, spouse, children, or close personal friends) when the circumstances make it clear that it is those relationships rather than the business of the persons concerned which are the motivating factors."

or

"(4) The exchange of usual social courtesies which are wholly free of

---

4. We do not mean by this to include within the statute's ban gifts which could be merely used in connection with the performance of official duties, such as a watch, given by one whose occupation or interests display no nexus to the inspector's functions, such as a friend who works for an airline. It is the donor, rather than the gift, which must be related to the official functions.

5. The word "commerce" was substituted for the words "interstate or foreign commerce" and the word "Secretary" for the title "Secretary of Agriculture", because both of the new terms were defined for purposes of the Act in the amended definitional section, 21 U.S.C. § 601. *See* 1967 U.S.Code Cong. & Admin.News, pp. 637, 641–642.

any embarrassing or improper implications."

This regulation, and others concerning conflict of interest and relations to those regulated (§§ 0.735–13, 14, 21), thus recognize that meat inspectors are normal social beings—with family and friends—and that while some of their intimates may be persons engaged in commerce (a phrase discussed below), the exchange of gifts is a function of their personal rather than business lives. Although the regulations specifically direct each employee's attention to all the statutory provisions, including the instant one, relevant to their duties, § 0.-735–24, we need not rest on these regulations, which are part of an internal personnel manual designed primarily as the basis for departmental disciplinary proceedings, see § 0.735–5, as the definitive construction of this criminal statute. See Champlin Refining Co. v. Corporation Comm'n of Okl., 286 U.S. 210, 242–243, 52 S.Ct. 559, 76 L.Ed. 1062 (1932).[6] It is enough to note that the Department has already drawn the basic distinction which we find in the statute.[7]

Our interpretation is also supported by 18 U.S.C. § 201, the general federal bribery statute and its construction in United States v. Irwin, 354 F.2d 192 (2d Cir. 1965), to which defendant refers us to pinpoint what he claims is the inadequacy of the statute before us. In Ir-

win, the court considered §§ 201(f) and (g) which prohibit, respectively, the giving to or accepting by a public official of anything of value "for or because of any official act performed or to be performed by such public official". As the court there properly noted, those words, indicating a causal relationship to specific acts, could well be read as requiring a specific intent to alter official conduct. 354 F.2d at 197. Use of such words in § 622, which defendant suggests would provide adequate warning, would, however, destroy the explicit Congressional purpose not to require any intent in Part 3. Although words such as those we suggest above, requiring an objective jury determination that the gifts are in connection with or arising out of the performance of official duties, could concededly have been used here without subverting the no-intent clause,[8] Congress might have thought such a phrase surplusage, in light of the statute's evident meaning.

■ The defendant could not complain, nor did he, that the evidence here was insufficient to prove connection with his official duties or that the court's instructions were erroneous because of the omission of a reference to this requirement. The evidence here was abundant in this regard and rendered the district court's omission, obviously understandable in light of the

---

6. The regulations were promulgated pursuant to Executive Order 11222 of May 8, 1965 and 5 C.F.R. § 735.104, which provide for agency regulations defining the ethical restraints on employees. Although § 622 also provides for summary discharge of those violating its proscriptions, the statute is essentially a criminal one and the Secretary of Agriculture is not given authority to define its meaning or terms.

7. We have already indicated we believe that the statute on its face is clear and gives meat inspectors adequate notice of what conduct is prohibited. We note in addition that the regulations were originally promulgated on June 18, 1966, 31 F.R. 8528, before the dates of the substantive offenses and the overt acts of the conspiracy committed by the defendant.

8. The absence of a requirement that the government prove intent, either of the donor to influence official conduct, or of the recipient to alter his performance, does not mean that the statute is one of strict liability. The receiving or accepting official must, as the indictment stated and the district court instructed, at least do so knowingly—i. e., be aware that the transfer is one of value and the transferor one engaged in interstate commerce. Of course, as with other mental elements, the jury may infer its presence from the surrounding circumstances. But certainly Congress could not have intended to punish one who receives a birthday gift from an acquaintance, unaware that the latter was coerced or bribed into giving it by a meat processor, or one who wins a raffle prize, not knowing that the game was fixed in his favor.

lack of prior interpretation of this statute, harmless. Naturally, district courts in the future will, given our interpretation, instruct the jury that to convict they must find, beyond a reasonable doubt, a connection with official functions, although of course proof may, as with other elements, be by circumstantial evidence.[9]

■ We turn then to defendant's second and more impressive argument. He claims that since Part 1 of § 622, which covers the giving of intentional bribes, refers to "any person, firm, or corporation, or any agent or employee of any person, firm, or corporation" and Part 2, which covers the receipt of intentional bribes, refers to "any person, firm, or corporation, or officers, agents, or employees thereof", the limitation in Part 3 to "any person, firm, or corporation engaged in interstate or foreign commerce"—without any mention of employees, agents, or officers—must mean that only businesses or proprietors of businesses engaged in interstate commerce are covered. Although his suggestion is facially plausible and attractive, we believe that it would improperly and unnecessarily restrict the intended scope of this statute. Defendant's proposal would mean that even though the government had established a gift by an employee of a company engaged in interstate commerce, it would further have to prove that the employee was acting as the agent of his employer who was the real donor. But this agency element would defeat Congress' purpose in avoiding even the appearance of impropriety, for it would mean that even acceptance of a car from a pool of employees of a meat packing concern, purporting to be a birthday gift, could not be punishable unless the government could present some proof that this gift was pursuant to the urging, suggestions, direction, or policy of the company's board, officers, or supervisors. The mere fact that there is abundant proof of such a corporation policy in the case before us is no justification for so restricting the statute. Nor is such a narrow interpretation necessary to prevent improper application of this section to one who is a gift-bearing personal friend of the inspector but who happens to work for a corporation, such as an airline, engaged in interstate or foreign commerce. The requirement that there be a nexus between the donor's interests or occupation and the inspector's official functions, *see* n. 4 *supra*, is adequate protection.

Finally, reading the phrase "person . . . engaged in interstate commerce" in Part 3 to cover employees, officers, and agents of a business engaged in interstate commerce, neither introduces a novel use of the phrase, *see, e. g.*, 29 U.S.C. §§ 206(a), 207(a)(1), nor renders meaningless Congress' more limited enumeration in this part. Parts 1 and 2 require a showing of specific intent to corrupt. A corporation or firm is not normally thought capable of such a mental state. For that reason, Congress felt obliged to enumerate the natural persons who could be shown to bear

9. Defendant suggests another horrible—that he could be prosecuted for receiving in the mail an unsolicited promotional circular containing a free pen or calendar. This fear is insubstantial for two reasons. First, there would be insufficient evidence of connection with official duties. As we noted in n. 4 *supra*, it is not enough to show that the gift is useable in connection with the performance of inspection functions, as so many common gifts are—pens, watches, suits, ties, and the like. The person must bear some connection to the recipient's official life. Second, we think the statute was obviously not intended to cover trivial gratuities like a pen. Again the regulation, from which defendant seems to have garnered his hypothetical horribles, indicates what we take to be the self-evident reading of the statute:

"Acceptance of unsolicited advertising or promotional material, such as pens, pencils, note pads, calendars, and other things of *nominal value*."

is not prohibited. 7 C.F.R. § 0.735–12(b) (3) [emphasis added]. We would only add that we doubt that solicitation of a ball-point pen because one's own ran dry, even from a meat processor in the course of a plant inspection tour, would be punishable.

the evil purpose. In Part 3, Congress eliminated all intent requirements. It was thus unnecessary to specify particular agents and similarly unnecessary to restrict the term "person" to proprietors, as was done in the earlier parts.[10]

■ Lastly, the defendant complains because proof of 49 acts which were said to have occurred before the relevant date set by the statute of limitations was admitted into evidence. Although the district court denied defendant's motion to dismiss the conspiracy count because of its allegation of these 49 pre-statute of limitations overt acts, it permitted evidence of those acts to be introduced only to prove the nature and continuity of the conspiracy. The defendant admits that the pre-statute of limitations evidence was admissible "to show the nature of the scheme and the intent", but only "if it is connected up with the scheme existing when the overt acts were performed", properly citing United States v. Blosser, 440 F.2d 697, 699 (10th Cir. 1971), for the proposition. *See also* United States v. Borelli, 336 F.2d 376, 385 (2d Cir. 1964).

We do not disagree with the proposition but fail to see how it advances defendant's case. It is true that at the time of the overt acts in 1967 (which also formed the basis for the substantive counts), defendant was not assigned to Colonial, as he had been in the first six months of 1965 when most of the pre-statute of limitations acts occurred. But the indictment was not limited to a conspiracy to corrupt his behavior only during the period of the alleged conspiracy or to corrupt him only by payments at the time he was assigned to Colonial. Rather it alleged a general conspiracy to defraud the government of the honest performance of defendant's official duties free from the acceptance of things of value. The evidence as to the offer and acceptance of things of value by defendant in both 1965 and 1967, his violation of several federal sampling procedures in 1965, the rotating assignment of meat inspectors to particular plants for six months, and the possibility that during an assignment to one plant, an inspector might work at another, was sufficient to allow the jury to infer that there was one conspiracy, starting in 1965 and continuing into 1967, and that the transfers in 1967 could have been either payments for past acts or inducements to misconduct in the future should defendant work at the Colonial plant again. In the absence of any evidence indicating defendant's withdrawal from the conspiracy, or any evidence indicating such "a change in operations" as to vitiate any inference of agreement drawn from prior acts,

10. Should we be wrong in this interpretation, and the term "person" in Part 3 be limited to proprietors, the defendant would not gain. There was abundant evidence here that the three employees named in the indictment were acting on behalf of Colonial Provision. All testified to the general policy of the corporation to give meat products to meat inspectors, described the general procedures designed to implement that policy and their use in the particular transactions involved. Moreover, two were in policy-making positions and authorized or approved both the general corporate policy and the particular transactions alleged. There was no hint of a personal, non-corporate motivation or reason for any of these employees to provide defendant with the meat products.

Nor could the indictment be said to fail to charge an offense under the statute according to the more restricted interpretation, *see* n. 2 *supra*. Even if, pursuant to that view, it would be preferable to have alleged that the individuals were employees of a corporation engaged in interstate commerce, we could not say that this indictment failed to state an offense, given that a corporate gift could only be established by proof of the conduct of the corporate employees or agents.

Finally, the court's instruction could not be said to be erroneous, not to mention plainly erroneous, since no objections were preserved. The court instructed that there were five elements to the offense —the third of which was that "Colonial Provision Company was engaged in interstate commerce in meat and meat products" and the fourth that the defendant "accepted something of value from employees of the Colonial Provision Company."

*Borelli, supra,* 336 F.2d at 385, we do not see how the admissibility of the pre-statute of limitations evidence was erroneous.

Judgments affirmed.