**UNITED STATES of America,**
**Appellee,**

v.

**Anthony G. FORGIONE, Defendant,**
**Appellant.**

**No. 73–1202.**

United States Court of Appeals,
First Circuit.

Submitted Oct. 29, 1973.

Decided Nov. 5, 1973.

Certiorari Denied March 18, 1974.
See 94 S.Ct. 1561.

Walter J. Hurley, Boston, Mass., on brief, for defendant, appellant.

James N. Gabriel, U. S. Atty., and Lawrence P. Cohen, Asst. U. S. Atty., on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

■ This is an appeal by a government meat inspector convicted of accepting gifts from a person, firm or corporation engaged in commerce, in violation of 21 U.S.C. § 622. Defendant received gifts of meat products from the hands of employees of a firm whose products he was assigned to inspect. There was no proof that the employees themselves were engaged in commerce. In United States v. Seuss, 1 Cir., 1973, 474 F.2d 385, cert. denied, 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155, we upheld, after extensive analysis, the validity of section 622, and its applicability to a substantially identical fact situation. We would have affirmed the present conviction without opinion on the government's motion for summary affirmance pursuant to Local Rule 12, except that we feel obliged to comment.

In *Seuss* we stated that employees of a firm engaged in commerce were included in the statutory term "person[s] . . . engaged in commerce" in section 622. Defendant argues that this language in *Seuss* should not govern because his offenses were less extensive than those of Seuss. It is true that defendant was acquitted on some counts of his indictment (alleged gifts of money, as distinguished from meat products), but to argue that the statutory interpretation in *Seuss* is here inapplicable because Seuss was "a more flagrant and serious offender," and was also convicted of conspiracy, is an inexcusable attempt to confuse differences in the number of offenses with differences in the qualitative acts and circumstances of each offense. Examination of the *Seuss* opinion refutes any thought that these purported distinctions are of conceivable moment. As a final irrelevancy, defendant refers to the fact that in *Seuss* evidence was given indicating that Seuss had violated federal sampling procedures, whereas here the government failed to show defendant "rendered a quid pro quo by way of lessening his diligence." Such a showing was relevant to Seuss' conspiracy offense. In this prosecution there is no such issue.

Equally unsupportable is defendant's position on a question asked of a government witness.

"Q. Mr. Scalesse, on what facts did you rely in making these payments of money to Inspector Forgione

from August 28, 1968 to and including October 15, 1968?"

When defendant's objection had been overruled, the witness answered,

"A. So that we wouldn't be held up or slowed up in any production. That is the reason we made these payments and those are the facts."

Review of thirty pages of bench conferences preceding the framing of this question discloses that the defense agreed that it was relevant whether "any facts existed which entitled this defendant to the $100 a week," but stated that it would object to questions calling for the witness' "state of mind," or his "reasons" for making the payments. The objection to "reasons," as best we can discover, was that they might reflect the witness' "state of mind" rather than "facts." When, following this discussion, the question was asked in terms of facts, defendant objected, but did not explain. Now he argues that the question was "clearly erroneous for the reason that the question called for facts not within the witness' knowledge."

■ Nothing could be clearer than that the question did not "call" for facts of which witness lacked personal knowledge. True, it was broad enough to permit them. This is an objection to form, which could have been cured, if made. It is elementary that it is now too late. *See, e. g.,* 5A Moore's Federal Practice § 46.02, at 1904 (1971); Roberts v. United States, 3 Cir., 1963, 316 F.2d 489, at 497; Reck v. Pacific-Atlantic S. S. Co., 2 Cir., 1950, 180 F.2d 866, 870; *cf.* New York, N. H. & H. R. Co. v. Zermani, 1 Cir., 1952, 200 F.2d 240, 245, cert. denied, 345 U.S. 917, 73 S.Ct. 729, 97 L.Ed. 1351.

■ Parenthetically, whatever possible defect there might have been in this question, we would find it difficult to see what is left of defendant's objection after the court, by unobjected-to questions at the close of the examination, brought out the basic fact that there was no reason for the alleged payments other than the facts that defendant was an inspector and had requested them. But, however that may be, defendant faces a more serious difficulty. He was acquitted on all the counts on which the question bore. He thus finds himself compelled to argue that the answer to a question which proved to have no direct consequences somehow carried the day in an area to which it did not relate. Even to state this contention would seem to answer it. We find unpersuasive defendant's suggestion that the jury's view of the entire case may have been colored by this one answer.

■ Unsupportable, too, is defendant's objection to the fact that a government witness' explanation of his conduct involved a reference to criminal acts (if established) other than those for which defendant was on trial. Again, it is elementary that evidence of other criminal acts, inadmissible to prove the defendant's bad character, is admissible when of independent relevancy. We are not taken by defendant's plea that the correctness of United States v. Jones, 7 Cir., 1971, 438 F.2d 461, is an open question in this circuit. *See* United States v. Plante, 1 Cir., 1973, 472 F.2d 829, at 831, cert. denied, 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411; Dirring v. United States, 1 Cir., 1964, 328 F.2d 512, 514–515, cert. denied, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052.

■ We see no need to devote space to demonstrate the lack of merit in defendant's complaint that the "jury may have been confused whether a government witness used certain papers as past recollection recorded or present recollection refreshed," and that the court abused its discretion in permitting leading questions. As to the former we can best quote Professor Wigmore, Evidence (3d ed. 1970) § 755, that such distinctions tend to become "vain quibbles, having no relation to probative value." The witness evidenced no more confusion than any lay witness might. We see no error, and no possible prejudice if there were one. As to the latter, the questions, if leading at all, were routinely within the court's discretion.

We recognize, we hope fully, the right, indeed the duty, of counsel to resolve all issues of any possible doubt in favor of his client, and to be a vigorous, sometimes even abrasive advocate. See discussion in In re Samuel A. Bithoney, 1 Cir., 1973, 486 F.2d 319. In the case of appointed, as distinguished from, as here, retained counsel, we have recognized the heightened dilemma of being caught between an unreasoning client and counsel's own good judgment. *See* Belbin v. Picard, 1 Cir., 1972, 454 F.2d 202, at 204. But there must be a limit. In re Samuel A. Bithoney, ante; United States v. Plante, ante, 472 F.2d at 833; *cf.* Anders v. California, 1967, 386 U.S. 738, at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. The empty contentions made in the present case go far beyond that limit. We publish this opinion not because of any contribution it makes to the law, but so that the bar may be in no doubt as to our views.

The judgment of the District Court is affirmed, and, pursuant to Local Rule 17, it is ordered that defendant's bail be terminated forthwith.