**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert MULLENS, Defendant-Appellant.**

**No. 78–5146.**

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1978.

William E. Gandy, Paris, Tex., for defendant-appellant.

John H. Hannah, Jr., U. S. Atty., M. Lawrence Wells, Asst. U. S. Atty., Tyler, Tex., Breckenridge L. Willcox, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, RONEY and GEE, Circuit Judges.

RONEY, Circuit Judge:

In a case of first impression before this Court, defendant challenges the constitutionality of 21 U.S.C.A. § 622, which prohibits, among other things, the acceptance of gifts by federal meat inspectors. Convicted of 33 violations of this statute and three counts of perjury for denial of the receipt of the gifts in testimony before a Grand Jury, 18 U.S.C.A. § 1623, defendant also seeks to have his convictions set aside for insufficient evidence, failure to grant severance, erroneous evidentiary rulings and instructions, and failure to establish identification. Concluding that 21 U.S.C.A. § 622 is constitutional and that defendant's other contentions do not require reversal, we affirm.

### Background

Defendant, Robert Mullens, was employed by the United States Department of Agriculture under the Meat and Poultry Inspection Program. He was assigned to inspect Stevens Foods, Inc. ["Stevens"], a Texas corporation whose principal facilities were located in Paris, Texas. Stevens was engaged in the meat processing business and served the United States Armed Services as well as commercial clients.

In May 1976, an intensive investigation was undertaken into reported irregularities involving Defense Department meat contracts with Stevens, coupled with an investigation of United States meat inspectors. In the course of this investigation, Mullens was summoned to testify before the Federal Grand Jury for the Eastern District of Texas. The Grand Jury returned a 39-count indictment against Mullens alleging illegal receipt of gratuities in connection with his duties as meat inspector and perjury in his Grand Jury testimony. The indictment charged that Mullens had received a $100.00 bribe from Steve Aaron, president of Stevens, a basket of fruit, and meat, hams, and turkeys on various occasions from April 1972 continuing intermittently into 1975. Defendant was sentenced to two years imprisonment on all counts to run concurrently with eligibility for parole after six months. 18 U.S.C.A. § 4205(b)(1). This appeal followed.

### I. Constitutional Challenge

Defendant challenges the constitutionality of 21 U.S.C.A. § 622. The relevant portion under which defendant was charged provides:

> *Bribery of or gifts to inspectors or other officers and acceptance of gifts*
>
> . . . . .
>
> [A]ny inspector, deputy inspector, chief inspector, or other officer or employee of the United States authorized to perform any of the duties prescribed by this subchapter . . . who shall receive or accept from any person, firm, or corporation engaged in commerce any gift, money, or other thing of value, given with any purpose or intent whatsoever, shall be deemed guilty of a felony and shall, upon conviction thereof, be summarily discharged from office and shall be punished by a fine not less than $1,000 nor more than $10,000 and by imprisonment not less than one year nor more than three years.

Although this Court has not before had occasion to consider this provision, it has previously been upheld by both the First and Second Circuits. *United States v. Gelfand,* 559 F.2d 1205 (2d Cir. 1977) (district court decision upholding statute affirmed in open court); *United States v. Forgione,* 487 F.2d 364 (1st Cir. 1973), *cert. denied,* 415 U.S. 976, 94 S.Ct. 1561, 39 L.Ed.2d 872 (1974); *United States v. Murphy,* 480 F.2d 256 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973); *United States v. Tropeano,* 476 F.2d 586 (1st Cir.), *cert. denied,* 414 U.S. ·839, 94 S.Ct. 90, 38 L.Ed.2d 75 (1973); *United States v. Seuss,* 474 F.2d 385 (1st Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973). As applied to the facts of this case, we agree with these circuits that the statute is constitutional.

### A. The Necessity of Specific Criminal Intent

In an interconnected argument, defendant alleges that either the statute is fatally defective for failure to require specific criminal intent or, if the statute is judicially interpreted to require such intent, the conviction must be set aside for failure of both the indictment and instructions to detail this element.

■ Citing *Smith v. California,* 361 U.S. 147, 162, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), defendant argues that the ability of Congress to enact a statute punishing an act as *malum prohibitum* without requiring proof of specific criminal intent is limited. While limits to this power certainly exist, especially in the area of obscenity and First Amendment rights with which *Smith* was concerned, it is well recognized that the legislature has

the power to delete the requirement of scienter where the statute deals with an area related to the general public health, morals, safety or welfare. *United States v. Balint,* 258 U.S. 250, 252, 42 S.Ct. 301, 66 L.Ed. 604 (1922). One example cited by the Supreme Court in both *Smith* and *Balint* where specific intent need not be required was the area of pure food laws. If Congress has the power to declare the sale of impure food a crime without proof of specific criminal intent, it surely can declare acts of impropriety by its inspectors engaged in upholding those laws *mala prohibita,* as well.

■ An examination of the language of 21 U.S.C.A. § 622 makes it apparent that Congress did not intend to impose a requirement of specific intent. Not only is there an absence of the formal language of intent, but there is the express provision that the receipt of any thing of value "given with any purpose or intent whatsoever . . ." is prohibited.

■ Therefore, in this case the Government had only to establish general criminal intent which is a necessary element to be proven in a crime. *United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). Specifically, it was only necessary to prove that defendant, a meat inspector, willfully or voluntarily received the alleged gifts from those he inspected. The evidence substantially supports the conclusion that receipt was voluntary. The instruction of the district court, set out below, correctly addressed these points.[1]

This conclusion is supported by the judicial interpretation of analogous statutes dealing with bribery of public officials, 18 U.S.C.A. § 201, *see, e. g., United States v.*

---

1. This portion of the instruction stated:

You are further instructed that a thing of value must be something of monetary value. However, it must be of more than trivial value. For example, a ball point pen and a calendar are things of trivial value.

Under the terms of the statute the purpose or intent with which the money gift or things of value was given to the defendant or was accepted by him is irrelevant. The acceptance by a meat inspector of the United States

for any purpose of money, gifts or other things of value from a corporation he was inspecting or should reasonably expect that he would inspect is sufficient to establish the offense charged. However, the jury must find that he received the money, gift or other thing of value willfully and knowingly beyond a reasonable doubt, and not by accident, mistake, inadvertence or misunderstanding.

*Irwin,* 354 F.2d 192 (2d Cir. 1965), *cert. denied,* 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966), and bank examiners, 18 U.S.C.A. § 213, *United States v. Bristol,* 473 F.2d 439 (5th Cir. 1973). In *Bristol,* this Court held that "[t]he public's need for disinterested bank examiners makes acts which frustrate that need *malum prohibitum* and this obviates the necessity for any specific intent." 473 F.2d at 443.

As an alternative approach, defendant suggests that if this portion of the statute is valid even though specific intent is not required, there is an impermissible classification of meat inspectors depriving him of equal protection in violation of the due process clause of the Fifth Amendment. *See Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

■ Defendant points out that the statute contains three portions, two of which expressly require specific intent.[2] While it is necessary to establish specific intent to sustain a conviction under the statute as regards a donor, for example, such intent is not necessary as regards a donee meat inspector. Thus, 21 U.S.C.A. § 622 contains a classification on its face, distinguishing

meat inspectors from all others. Because this classification is based neither on an ability to exercise a fundamental right nor on "suspect" traits, such as race or national origin, *see Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), it will be reviewed under the rational relationship test. *See, e. g., Dandridge v. Williams,* 397 U.S. 471, 484–485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Therefore, defendant's equal protection argument can succeed only if the classification bears no rational relationship to a legitimate government purpose.

■ The purpose of the Meat Inspection Act of 1907, as amended, of which the present section 622 is a part, is to ensure a high level of cleanliness and safety in meat products.[3] Such a purpose is certainly legitimate and within the power of the federal Government under the commerce clause. The federal meat inspector is a critical enforcement mechanism in the schema of the Act and the inspector's integrity and exercise of independent judgment is vital to its success. Congress could reasonably conclude that the role of the meat inspector

---

**2.** 21 U.S.C.A. § 622 reads:

*Bribery of or gifts to inspectors or other officers and acceptance of gifts*

Any person, firm, or corporation, or any agent or employee of any person, firm, or corporation, who shall give, pay, or offer, directly or indirectly, to any inspector, deputy inspector, chief inspector, or any other officer or employee of the United States authorized to perform any of the duties prescribed by this subchapter or by the rules and regulations of the Secretary any money or other thing of value, with intent to influence said inspector, deputy inspector, chief inspector, or other officer or employee of the United States in the discharge of any duty provided for in this subchapter, shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by a fine not less than $5,000 nor more than $10,000 and by imprisonment not less than one year nor more than three years; and any inspector, deputy inspector, chief inspector, or other officer or employee of the United States authorized to perform any of the duties prescribed by this subchapter who shall accept any money, gift, or other thing of value from any person, firm, or corporation, or officers, agents, or employees thereof, given with intent to influence his official action, or who

shall receive or accept from any person, firm, or corporation engaged in commerce any gift, money, or other thing of value, given with any purpose or intent whatsoever, shall be deemed guilty of a felony and shall, upon conviction thereof, be summarily discharged from office and shall be punished by a fine not less than $1,000 nor more than $10,000 and by imprisonment not less than one year nor more than three years.

**3.** In 1967, Congress amended the Act so as to include an explicit statement as to its purpose. 21 U.S.C.A. § 602, *Congressional Statement of Findings.* Section 602 states that

[u]nwholesome, adulterated, or misbranded meat or meat food products impair the effective regulation of meat and meat food products in interstate or foreign commerce, are injurious to the public welfare, destroy markets for wholesome, not adulterated, and properly labeled and packaged meat and meat food products, and result in sundry losses to livestock producers and processors of meat and meat food products, as well as injury to consumers.

*See also,* [1967] U.S.Code Cong. & Admin. News, pp. 2192 & 2197.

was of such significance as to justify a commensurately strict standard which prohibited receipt of anything of value *for any reason* even though donors were not held to such a standard. This classification is rationally related to a legitimate statutory goal, safe meat products, in that it seeks to preserve the independent judgment of meat inspectors.

In concluding that the distinct classification of federal meat inspectors does not violate the equal protection guarantees implicit in the Fifth Amendment, we align ourselves with the First Circuit which so held in *United States v. Murphy, supra.* The *Murphy* court decided that

[i]t is of course entirely reasonable for Congress to decide that the federal inspector—the one with ultimate power to control the products leaving the plant and the one imbued with a substantial public trust—should be treated more strictly than private parties whose offers of money can be refused, who do not have the final word on the produce going to the market, and who may be lowly employees with little power and perhaps are acting without corporate direction.

480 F.2d at 259.

### B. Overbreadth and Vagueness

Defendant alleges that 21 U.S.C.A. § 622 is drawn so broadly as to place within its grasp activities which are entirely proper and legal, thereby depriving him of due process of law under the Fifth Amendment. Specifically, defendant calls the Court's attention to the statutory phrase "thing of value" and the absence of any requirement that the gift be in connection with the performance of official duties.

#### 1. "Thing of Value"

21 U.S.C.A. § 622 prohibits receipt of any gift, money, or other "thing of value." Concerned about the breadth of this language and its consequences in peripheral situations, the First Circuit in *United States v. Seuss, supra,* 474 F.2d at 390 n.9, excluded what it termed "trivial gratuities" such as the receipt of a ballpoint pen solicited

because one's own pen ran dry. Defendant contends that such a limitation itself suffers from the same vagueness which affects the statute.

While we seriously doubt the applicability of the statute to trivial gifts such as those hypothesized by defendant, we need not reach that issue in this case. As the Supreme Court has stated,

[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.

*United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). *See also United States v. Wurzbach,* 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930).

■ There is no doubt that the money, fruit basket, and quantities of meat received by defendant were substantial. Having been found to have received such substantial items, defendant will not be heard to object to the statute on behalf of recipients of insubstantial items. As Mr. Justice Holmes suggested in *Wurzbach* in discussing a similar hypothetical problem, "if there is any difficulty, which we are far from intimating, it will be time enough to consider it when raised by someone whom it concerns." 280 U.S. at 399, 50 S.Ct. at 169.

■ In the present case it would appear that receipt of just such items as those received by defendant was the very conduct that Congress intended to prohibit by enactment of section 622. Moreover, its language gives "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). Consequently, the application of the statute to the facts of this case is constitutional.

#### 2. In Connection with the Performance of Official Duties

A more difficult problem is created by the absence of language in the statute requiring the receipt of a thing of value to be

in connection with the performance of official duties. Absent such a nexus, the statute would probably fatally suffer from vagueness and overbreadth.

To remedy this defect, the First Circuit in *Seuss* has engrafted the requirement that prohibited acts must be *"in connection with or arising out of the performance of . . . official duties."* 474 F.2d at 388. The court bases this interpretation which we adopt here upon a thorough analysis of the legislative history and the interpretation given the statute by the Department of Agriculture. *See id.* 388–390.

Such an interpretation avoids hypothetical situations where the statute would encompass birthday gifts or even the usual social courtesies present in an obvious family or personal relationship where it is clear from the circumstances that they are motivated by relationships other than the business of the persons concerned.

Since the prohibited conduct must be in connection with defendant's performance of official duties, the indictment and jury instructions must be examined to determine whether this element was present in this case.

It is well settled that an indictment must allege each and every element of the crime charged to pass constitutional muster. *See Honea v. United States,* 344 F.2d 798 (5 Cir. 1965); *Lott v. United States,* 309 F.2d 115 (5th Cir. 1962), *cert. denied,* 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963).

The indictment with which defendant was charged did not contain language identical to the *Seuss* formulation but it did allege sufficient facts to show the connection with official duties. Paragraphs 1 through 4 of Count 1 of the indictment, realleged and incorporated in each of the other 35 bribery counts, indicate that Mullens was a meat inspector assigned to inspect Stevens Foods, Inc., a meat processor.[4] Unless we attach some talismanic significance to the precise language of *Seuss,* the indictment is sufficient. Because the court did not address the language of the indictment in *Seuss,* the statute does not contain the *Seuss* formulation, and the indictment tracks the statutory formulation and also contains factual averments indicating that the misconduct occurred in the context of official duties, we deem the indictment adequate to apprise defendant of the charge and to enable him to prepare a defense.

The district court's instructions also made it explicit that the receipt of things of value from Stevens had to be connected with defendant's status as meat inspector for Stevens if the jury was to find him guilty.[5] Having been properly circum-

---

4. Paragraphs 1 through 4 of Count 1 read as follows:

1. At all times stated herein Stevens Foods, Inc., a Texas corporation with its principal place of business and plant facility located at Paris, Lamar County, in the Eastern District of Texas, was engaged in the business of buying, receiving, storing, handling, processing, fabricating, packing, selling and shipping meat and meat food products in commerce.

2. At all times stated herein, Stevens Foods, Inc., was subject to the provisions of the Federal Meat Inspection Act, as amended by the Wholesome Meat Act, Title 21, United States Code, Sections 601 *et seq.,* and the regulations promulgated thereunder, and was operating pursuant to a grant of inspection issued by the United States Department of Agriculture.

3. At all times stated herein, ROBERT MULLENS, defendant herein, was an Inspec-

tor employed by the United States Department of Agriculture under the Meat and Poultry Inspection Program of the Animal and Plan Health Inspection Service.

4. At all times stated herein, except as set out in Counts XXIX, XXX, XXXI, XXXV and XXXVI, *infra,* ROBERT MULLENS, defendant herein, was authorized and assigned to conduct inspections at the plant facilities of Stevens Foods, Inc., as prescribed by the provisions of Subchapter I of the Federal Meat Inspection Act, as amended by the Wholesome Meat Act, Title 21, United States Code, Sections 601 *et seq.,* and the regulations promulgated thereunder.

5. The district court's instructions in part advise the jury that they must find that:

at the time defendant Robert Mullens received or accepted such money gifts or thing of value from Stevens Foods, Incorporated, he performed official duties at Stevens

scribed by the indictment and jury instructions, defendant's conviction was constitutionally obtained.

## II. *Nonconstitutional Challenges*

### A. *Sufficiency of the Evidence*

 Defendant challenges the sufficiency of the evidence. He argues that the testimony of the key Government witness, Charles Duty, should be disregarded for vagueness and lack of corroboration. The alleged vagueness stems from Duty's failure to recall the date of the incidents. The fact that Duty was unable to recall the precise date of each incident during the approximately two-year period in which he gave meat to defendant, however, does not render his testimony insufficient. The jury heard corroborating testimony of eight additional witnesses who either packed boxes of meat for defendant, carried them to his vehicle, or conversed or overheard him converse about his personal utilization of the meat. Viewed most favorably to the Government, the evidence is sufficient to support the conviction.

The evidence adduced by the Government, moreover, is sufficient to support the conclusion that the alleged receipt of gifts was in connection with defendant's official duties.

 While defendant urges that the convictions under some of the counts should be reversed because he received the meat for a justifiable reason, we need not reach this question. The instant case is appropriate for application of the concurrent sentence doctrine. In its classic form, this doctrine permitted a court on review to decline to consider the validity of a conviction on other counts as to which a concurrent sentence had been imposed where the conviction could be sustained on one count. *Claassen v. United States,* 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966 (1891). In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court reduced the force of the doctrine, holding that

there was "no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed." 395 U.S. at 791, 89 S.Ct. at 2061. The doctrine, however, retains validity "as a tool of judicial convenience" to be applied as a matter of discretion. *Id.* See, e. g., *Barnes v. United States,* 412 U.S. 837, 841, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Tidwell,* 559 F.2d 262 (5th Cir. 1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978).

 Where defendant has received 36 concurrent sentences, 33 of which are for similar offenses, and his defense theory fails to attack at least half of the counts, application of the concurrent sentence doctrine seems to be warranted. The collateral effects of conviction for the counts remaining, even assuming that defendant's arguments were sustained as to the similar counts attacked, would appear to be no different from conviction of all of them.

### B. *Severance*

Defendant argues he was prejudiced by the cumulative effect of a trial under multiple counts and the joint trial of the bribery and perjury charges.

 The grant or denial of severance under Fed.R.Crim.P. 14 is within the sound discretion of the court and a denial does not warrant reversal where there is no showing of clear prejudice. *United States v. Nell,* 526 F.2d 1223, 1230–1231 (5th Cir. 1976).

 No prejudice having been shown by trial under the multiple count indictment, the district court's exercise of its discretion will not be disturbed. Defendant is not prejudiced, either, by inclusion of the perjury counts. The testimony before the Grand Jury upon which the counts are based asserts defendant's innocence. The jury's consideration of such testimony to determine if it was perjured could not prejudice defendant's trial on the bribery issue.

Foods, Incorporated, or should reasonably have anticipated that he would be assigned

official duties at Stevens Foods, Incorporated.

### C. *Other Issues*

The other issues raised by defendant do not warrant relief. The evidentiary rulings of the trial court regarding admissibility of evidence were within its sound discretion and will not be disturbed where, as here, no abuse is demonstrated. In view of our determination of the constitutional issues raised by defendant, we need not consider the complaints as to the instructions which turned upon these issues. A *prima facie* identification of defendant as a witness before the Grand Jury was established by means of the testimony of Mrs. Newton, the certified court reporter. Defendant did not rebut this testimony. Indeed, upon testifying in his own behalf, he admitted on cross-examination that he had appeared before the Grand Jury.

### *Conclusion*

We conclude that there is no necessity of alleging specific criminal intent in an allegation under 21 U.S.C.A. § 622 for receipt of things of value by a federal meat inspector and that the statute is a legitimate legislative exercise related to a proper end. It is neither overbroad nor vague in its application to the instant case where the value of the items is obvious and where the connection with the performance of official duties has been established. Having upheld the constitutionality of the statute and being satisfied as to the sufficiency of the evidence on many of the specific counts, we decline to examine defendant's objections as to some specific counts under the concurrent sentence doctrine. The rulings of the trial court were proper and without error.

AFFIRMED.