UNITED STATES of America, Appellee,

v.

Richard H. MURPHY, Defendant, Appellant.

No. 72–1182.

United States Court of Appeals, First Circuit.

Heard May 7, 1973.

Decided June 13, 1973.

Brian T. Callahan, Medford, Mass., by appointment of the Court, for appellant.

James B. Krasnoo, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALD-RICH and McENTEE, Circuit Judges.

McENTEE, Circuit Judge.

Defendant, Richard H. Murphy, a federal meat inspector convicted on ten counts of accepting money from a person, firm, or corporation engaged in interstate commerce in violation of 21 U.S.C. § 622, challenges these convictions on thirteen grounds. We discuss only those which are either not resolved by United States v. Seuss, 474 F.2d 385 (1st Cir. 1973), cert. denied, 412 U.S. 928, 93 S. Ct. 2751, 37 L.Ed.2d 155 (1973), or are not clearly frivolous.

In July 1968 defendant, on the first day of his assignment at State Beef Company, requested payment of $25 per week in exchange for more lenient enforcement of the statutes and regulations which governed the firm's operations. State Beef's owner, Abraham Cohen, testified that he paid defendant this sum every Friday from September 11 to October 15, 1968, the period specified in the indictment. In January 1970 defendant was reassigned to Blue Star Kosher Products, Inc. Once again, on his first day in the plant, he informed Blue Star foreman George Goldrich that he expected to be paid, this time, $50 per week. When Goldrich protested that he did not possess the authority to authorize such payments, Erich Rosengarten, the plant manager of the firm that owned Blue Star, was consulted and eventually payments of $35 per week were agreed upon. Rosengarten testified that he arranged to have defendant paid this sum once each week from April 1 to May 12, 1970, the period in question.

■ On this background defendant first challenges part III of 21 U.S.C. § 622 [1] on equal protection grounds. Specifically, he contends that this provision draws an impermissible distinction between two similarly situated groups, meat inspectors and meat packers, by making it an offense for inspectors to accept or receive any item of value, irrespective of the intent of the donor, while creating no corresponding offense covering packers. The difficulty with this argument, however, lies in its premise since it is clear that in enacting The Meat Inspection Act of 1907, 34 Stat. 1264, of which the predecessor of § 622, 21 U.S.C. § 90, was a part, Congress was justified in drawing distinctions between the group of federal employees who were to be charged with the enforcement of the Act and the other participants in the meat processing industry. As noted in *Seuss, supra* at 388 of 474 F.2d, the aim of Congress in enacting this legislation was "to insure that meat products sold to the consumer [would] be clean and safe. [In implementing this policy a] system of federal inspection was created and the inspectors subjected to strict regulation lest their corruption—or the appearance of it—undermine the quality of meat or the public's trust in their supervision of

---

1.  Part III of § 622 provides:
    "[A]ny inspector . . . authorized to perform any of the duties prescribed . . . who shall receive or accept from any person, firm, or corporation engaged in commerce any gift, money, or other thing of value, given with any purpose

or intent whatsoever, shall be deemed guilty of a felony and shall, upon conviction thereof, be summarily discharged from office and shall be punished by a fine not less than $1,000 nor more than $10,000 and by imprisonment not less than one year nor more than three years."

meat quality." It is of course entirely reasonable for Congress to decide that the federal inspector—the one with ultimate power to control the products leaving the plant and the one imbued with a substantial public trust—should be treated more strictly than private parties whose offers of money can be refused, who do not have the final word on the produce going to the market, and who may be lowly employees with little power and perhaps are acting without corporate direction. Since the statutory configuration defendant complains of clearly bears a rational relation to the achievement of these legitimate and laudatory legislative goals, we cannot agree that the statute offends the equal protection guarantees implicit in the fifth amendment.

Defendant next contends that the trial court erred in denying in whole or in part his pre-trial motions for a list of all persons expected to testify at trial, for disclosure of any immunity awarded the witnesses who either testified before the grand jury or were expected to testify at trial, and for the production of all exculpatory material in the possession of the government. We find the trial court's disposition of each of these motions to have been appropriate.

First, with regard to defendant's request for disclosure of the government's trial witnesses, since criminal defendants are ordinarily not entitled to this information, see United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969), and cases cited, it is settled that this motion was addressed to the discretion of the trial court. Given the simple nature of the underlying factual situation in the instant case and the fact that three of the government's four witnesses

were named in the indictment, this discretion was not abused in the denial of this motion.[2] Defendant's motion regarding transactional immunity was granted in part and denied in part, disclosure being required only at the time of trial and only as to those witnesses who actually testified. This disposition was also correct since, before trial, as defendant recognizes, he made no showing of any compelling need for this information. See Walsh v. United States, 371 F.2d 436 (1st Cir.), cert. denied, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967). Nor do his further contentions that such compelling need became apparent at trial and that he suffered prejudice and was deprived of procedural due process by the belated disclosure of this data withstand scrutiny. As a review of the record reveals, trial counsel never complained that he lacked an adequate opportunity to examine the grand jury testimony of the government's witnesses during trial and, as is abundantly clear from the transcript, full and skillful use of this testimony was made on cross-examination. Finally, the denial of defendant's motion for the production of exculpatory material on the government's representation that it did not possess any such evidence and that any that it did acquire would be made available was also proper. Again, aside from a single allegation that Rosengarten's testimony should have been turned over because it demonstrated that in making payments he was acting as an individual and not as an agent of Blue Star, a point which is clearly without merit in light of our conclusion in Seuss, supra at 390 of 474 F.2d, that no corporate policy need be established to sustain a § 622 violation,[3] defendant raises no other

---

2. The denial of defendant's request for a list of all persons called before the grand jury who were not sworn as witnesses was also proper since defendant demonstrated no compelling need for this data. See Walsh v. United States, 371 F.2d 436 (1st Cir.), cert. denied, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967).

3. This aspect of Seuss also disposes of the claim, raised for the first time on appeal, that the counts of the indictment fail to state an offense because only individuals are identified as donors and not corporations engaged in interstate commerce or individuals acting on behalf of such corporations.

allegation of government failure to make a required disclosure.

■ Defendant's next series of complaints are directed to the sufficiency of the government's proof or to events which occurred at trial. He argues first that the trial court erred in receiving evidence which indicated that he had committed a number of criminal acts, i. e., had accepted a number of illegal payments, in addition to those for which he was being tried. Mindful of the rule that evidence of offenses which are wholly independent of those charged is generally inadmissible, *see* Fish v. United States, 215 F. 544 (1st Cir. 1914), we note initially that the evidence in question might well have been admissible under exceptions to this rule either to show that defendant acted knowingly or wilfully in accepting these payments or because it was "so blended or connected with the [evidence of the offenses] on trial . . . that proof of one incidentally involve[d] the other. . . ." Green v. United States, 176 F.2d 541, 543 (1st Cir. 1949), *quoting* Bracey v. United States, 79 U.S.App.D. C. 23, 142 F.2d 85, 87, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944). Additionally, however, on the two occasions [4] when this evidence went in, defendant raised no objection. Especially in view of the obvious nexus between this evidence and the offenses on trial, we cannot say that these admissions constituted plain error.

■ Defendant further suggests that the government's evidence was insufficient to establish that State Beef and Blue Star were engaged in interstate commerce. This argument is not persuasive, however, in view of the testimony of State Beef's owner that he purchased meat in New Hampshire and sold it outside Massachusetts and of Blue Star officials that they made purchases in Maine and New Hampshire and sales in Connecticut and New York. Defendant's further attempt to characterize this evidence as *de minimis* and therefore inadequate must also fail since to require proof of an extensive participation in interstate commerce would be to place an unduly restrictive burden on the scope of § 622.

■ The prosecution's summation is the target of defendant's next attack. In this regard, he argues, in particular, that the government's repeated references to him as a "bribe taker" or "money taker" and its allusions to the potential impact "accommodating" meat inspection might have on the quality of meat sold to consumers were so prejudicial that he was deprived of a fair trial. This argument is unavailing for at least two reasons. First, the government is entitled to include an accurate summary of the evidence in its closing statement, *see* United States v. Miceli, 446 F.2d 256, 260 (1st Cir. 1971), and nothing which defendant has called to our attention indicates that this privilege was abused in the instant case. Unlike DeChristoforo v. Donnelly, 473 F.2d 1236 (1st Cir. 1973), on which defendant relies, the prosecutor did not "testify" as to his personal opinion of defendant's guilt or innocence. Second, since no objections were taken to the remarks in question, it is clear, under the circumstances, that this summation did not constitute plain error.

■ Defendant takes issue with the trial court's instruction in two respects. Without having requested an instruction on either issue, he asserts that the court committed plain error by failing to make mention of the transactional immunity granted the government's witnesses and by failing to instruct that in order to convict the jury must find a connection

---

4. From our review of the transcript we do not agree with defendant's assertion that evidence of the offenses not on trial came into the record on three additional occasions.

between the payments made and defendant's official duties, the so-called "connection requirement" instruction of United States v. Seuss, *supra*. Little need be said with regard to the absence of the instruction on the immunity issue other than to note first, that defendant raised no objection to the court's instructions on this ground, second, that he did make full use of this information on cross-examination, and finally, that the court did direct the jury to consider the witnesses' "intelligence, . . . *motives*, . . . *state of mind*, . . . demeanor and manner" in assessing their credibility. The absence of the connection requirement instruction also gives us little pause. Aside from the fact that this case was tried ten months before our decision in *Seuss*, thus making the omission of this instruction understandable, the evidence that these payments were made in connection with the performance of defendant's official duties was abundant. Given the fact that defendant demanded payments on his first day at both packing plants and even specified at State Beef that for $25 per week he would be less forceful in the performance of his responsibilities as an inspector, the court's failure to give this instruction did not constitute plain error.

Finally, defendant's request that we review his sentence is without merit. The three year term he received was clearly within statutory limits. His allegation that his receipt of the harshest sentence of all those given meat inspectors prosecuted in the District of Massachusetts in the recent spate of such trials was a denial of equal protection, being unequal or selective enforcement, is substantiated by nothing other than a list of the sentences meted out. In the absence of any affirmative showing of impropriety, United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), we cannot sustain this claim of unequal enforcement.

Affirmed.