UNITED STATES of America, Appellee,

v.

Robert F. DZIURGOT, Defendant, Appellant.

No. 80–1720.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1981.

Decided Nov. 16, 1981.

---

Jack David, New York City, with whom David & Finell, New York City, was on brief, for defendant, appellant.

Robert J. Lynn, Asst. U. S. Atty., Concord, N. H., with whom Robert T. Kennedy, U. S. Atty., Concord, N. H., was on brief, for appellee.

Before ALDRICH, Senior Circuit Judge, CAMPBELL and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

On March 3, 1977, a California brokerage office, Dean Witter and Company, mistakenly mailed a customer's ten $5,000 matured municipal bonds for redemption to the wrong agent, American Transfer Co. (ATC), P.O. Box 48, New Ipswich, New Hampshire. ATC was never an agent for these bonds. It was essentially defunct, but maintained the box for occasional mail. Its president, Jon Huber, received and receipted for the bonds on March 8. On March 24 defendant, Dziurgot, presented two of the bonds and final interest coupons to Chase Manhattan Bank, an authorized paying agent, in New York City; on March 29 he presented three more, and on March 31 the final five.[1] In each instance payment was made forthwith, no stop order having yet been entered. Defendant deposited the proceeds of seven bonds and their final coupons in his New York checking account. On April 1, a Friday, he opened a joint savings account in the name of himself and Huber, in Greenville, New Hampshire with the remaining $15,000 principal check, and cashed the corresponding coupon check at that bank. Defendant and Huber admittedly had a "close business relationship and personal relationship."

Defendant was charged in the New Hampshire district court with, and convicted of, interstate transportation, receipt and disposal of stolen securities in violation of 18 U.S.C. §§ 2314 and 2315. On appeal, except for an insubstantial claim that the evidence was insufficient, his complaints are all peripheral. We affirm.

---

1. There was evidence that the physical delivery was made by one Winfield, but the checks were made payable to defendant.

*Sufficiency of the Evidence—Interstate Transportation.*

Defendant and Huber owned and lived in the same house in New Ipswich, and defendant claimed New Hampshire as his legal residence on various pertinent occasions. He had a law office in New York City, and there was a question as to how much time he spent there. There was evidence, as well as inferences, however, of his being in New Ipswich over weekends. Two weekends intervened between Huber's receipt of the bonds and defendant's first tender in New York City. Although defendant repeatedly sought to persuade the jury that his admitting his closeness to Huber from the outset destroyed the unfavorable inference the government might have been able to draw if it had had to prove this closeness without defendant's concession, even the psychology of this ploy escapes us. Early admission is sometimes thought to draw the sting of impeaching evidence, but this was a basic part of the government's case, *cf. United States v. Cowden*, 1 Cir., 1976, 545 F.2d 257, 264, *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 from which the sting could not be drawn. We have reviewed the record, and are satisfied that the jury could rationally conclude beyond a reasonable doubt that defendant received the bonds from Huber in New Ipswich. But even if it could be thought that Huber did the transporting—an inference that would seem rebutted by the fact that there were two weekends for defendant, the New York commuter, to travel—it is almost inconceivable that defendant's first knowledge of, and contact with, the bonds would have been by Huber not only bringing them to New York, but bringing them unannounced. Defendant is the first person with whom Huber would have communicated. Equally the jury could infer he would have communicated his knowledge of having no right to the bonds. We reject defendant's empty claim that "it is every bit as likely that Huber alone, without any participation by Dziurgot, effected the transportation charged to Dziurgot."

*The Charge—Permissible Inferences.*

Defendant's requests for instructions occupy well over twenty pages of the Appendix. Largely this is due to their discursive, literary style, a practice we condemn. At best it wastes the time of the court, whose sole interest is in understanding the substance of what is being sought. At worst it may result in some substance being concealed, only to be resurrected on appeal. Neither circumstance, however, occurred here. Defendant makes only one point about the charge, and that only indirectly, in connection with whether the evidence justified a finding of his participation in the bonds' interstate transportation by virtue of an allowable inference arising out of recent possession. Possession, unexplained, may warrant an inference of knowledge of what has recently gone before, but it is a further step to say it warrants an inference that the possessor personally participated therein. We would agree, as an abstract matter, that mere recent possession would not justify an inference of complicity in the transportation. *Bollenbach v. United States*, 1946, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350. However, as already noted, there was much more in the record to support the inference of transportation than possession alone, and the jury was properly instructed to consider the inference in the light of the entire record. The language of the charge was broad, but so was the evidence. We see no error. *Cf. Ulster County Court v. Allen*, 1979, 442 U.S. 140, 155–57, 99 S.Ct. 2213, 2223–2224, 60 L.Ed.2d 777. Correspondingly we see no insufficiency in the government's proof of all elements of the offense.

*Venue.*

Defendant is quite correct that in the normal case, if the issue is raised, a defendant is entitled to have any factual question presented in connection with venue determined by the jury. *See, e. g., United States v. Black Cloud*, 8 Cir., 1979, 590 F.2d 270. In the case at bar, however, the New Hampshire involvement required to establish the Count I (18 U.S.C. § 2314) substantive offense would equally and fully

satisfy the requirements of venue. The verdict disposed of the question. There was no error in the court's treatment.

### Rulings, Evidentiary or Otherwise.

■ Before proceeding further we note briefly what we can only call on its face defendant's cock-and-bull attempt to prove through Winfield, ante, n.1, that the bonds were given Winfield, as his agent, in payment of a fee owed defendant by one Solmonte, an alleged client, since deceased. How the bonds got into Solmonte's hands, and, especially, how they passed through Huber without defendant's knowledge, was never explained, but worse was to come. The story exploded in defendant's face when a day and a half recess allowed the government to introduce a number of serious discrepancies, including, but by no means limited to, the fact that Winfield's description of Solmonte (dark hair, average businessman type, very nondescript) varied markedly from photographs of Solmonte (carrot red hair, full beard, muscular build), introduced through his former wife. Defendant is reduced to unimpressive evidentiary claims, e. g., that his former testimony, introduced to show consciousness of guilt, was impeaching and that impeachment was impermissible because he did not take the stand. We do not take the shield of the Fifth Amendment to be a sword to cut down the government's substantive case. We have reviewed all of defendant's other points, including his complaint about his sentence, and find none worthy of discussion, except one.[2]

**2.** Possibly some of the evidence introduced to show Huber's consciousness of guilt could be considered more prejudicial than probative. However, the clearly admissible evidence showing both defendant's and Huber's knowledge was so overwhelming that if this was error, it was harmless.

**3.** These include a complaint that reading certain of defendant's grand jury testimony had the effect of "impeachment of a defendant who did not testify;" that arguing that certain evidence was of recent manufacture (a claim which seems to us factually warranted beyond peradventure), and that there was no apparent good reason consistent with innocence for certain conduct, constituted comment on defendant's failure to take the stand; and again, that

### Prosecutorial Misconduct.

■ Defendant devotes eleven pages of his brief to charges of improprieties by the Assistant U.S. Attorney. Although many of these charges are too empty to require discussion,[3] this is a subject of our constant concern, and we will deal briefly with some of the contentions. One is that the prosecutor charged defendant with being "a thief and a crook."[4] Defendant objected to this after the completion of the argument (the court correctly stating that it should have been done immediately, see Holden v. United States, 1 Cir., 1968, 388 F.2d 240, 242–43, cert. denied, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132), as "improper and highly prejudicial for Mr. Lynn to express these opinions of his to the jury." Realizing, perhaps, that it was something of a stretch to condemn this as impermissible personal opinion rather than argument, cf. United States v. Murphy, 1 Cir., 1973, 480 F.2d 256, 260, cert. denied, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151; United States v. Welebir, 4 Cir., 1974, 498 F.2d 346, 351, on appeal defendant shifts his ground to claiming the prosecutor was impermissibly seeking to impeach his general character, citing United States v. Williams, 1 Cir., 1974, 496 F.2d 378. We think this a forced construction of the language. Rather, the attribution was in the context that defendant was a thief with respect to the bonds in question. If defendant thought otherwise, this is a classic instance where the ground should have been stated at the time.

the prosecutor's statement that there was no evidence on certain subjects constituted such comment, even though it would have been reasonable to expect evidence from sources other than defendant himself. The weakness of some of these claims, particularly the last, is accentuated by the fact that defendant conceded he did not "specifically object," or "expressly object" at the time. See Holden v. United States, post.

**4.** "Mr. Dziurgot may be many things. He is a thief, and he is a crook, but he is not a dummy." This statement was made in the course of meeting an anticipated contention that, the prosecutor claimed, would have to assume defendant to be totally stupid.

We comment on only one other matter in this area, defendant's attempt to say that the prosecutor stated there was additional unfavorable evidence beyond what he had introduced, citing *Ginsberg v. United States*, 5 Cir., 1958, 257 F.2d 950, 954–55. This is an improper construction. When defendant, during trial, came up with an unexpected defense, the court gave the government a day and a half recess to meet it, during which interval the government unearthed considerable rebuttal. In the course of discussing this rebuttal the prosecutor stated, "[W]e had a day and a half, ladies and gentlemen, from the time this whole story came up. And I submit to you if we had more time, we would have been able to come up with more evidence." This was patently argument and not a statement of fact, and, we add, not unfair. The government had discovered enough holes in the story ("a giant Swiss cheese") to warrant the inference that there might well be more discovered if time permitted. In no way was it an impermissible statement of fact.

Defendant is grasping at straws. We find nothing in the prosecutor's extensive—and cogent—summation to criticize.

*Affirmed.*