# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILHEMINA M. BATEMAN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N18C-01-033 FWW |
| v. | ) | |
| | ) | |
| STATE OF DELAWARE, | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: February 17, 2020
Decided: October 5, 2020

*Upon Defendant's Motion for Summary Judgment*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Allison L. McCowan, Esquire, Deputy Attorney General, Department of Justice, Carvel State Building, 6th Floor, 820 N. French Street, Wilmington, DE 19801, Attorney for Defendant.

Gary W. Aber, Esquire, 704 King St., Suite 200, P.O. Box 1675, Wilmington, DE 19899, Attorney for Plaintiff.

**WHARTON, J.**

## I. INTRODUCTION

Plaintiff, Wilhemina Bateman ("Bateman"), filed a *pro se* employment discrimination action against her former employer, the Delaware Department of Transportation ("DelDOT"), on January 8, 2018.[1] She alleged discrimination on the basis of race, gender, and sexual orientation as well as retaliation under the Delaware Discrimination in Employment Act ("DDEA"), 19 *Del. C.* §§ 711(a)(1) and (2), and 711(f). The retaliation claim alleged that DelDOT fired her in retaliation for her previous complaints of a hostile work environment and sexual harassment filed with DelDOT's human resources department and with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC").[2] DelDOT moves for summary judgment.[3] In her Answering Brief opposing summary judgment, Bateman abandons the discrimination claim and argues only the retaliation claim.[4]

Bateman alleges a history of racial, sexual, and sexual orientation abuse and harassment directed at her by co-workers and supervisors. She describes it as "the most vile, degrading and disgusting verbal and sexual abuse imaginable, complete sexual, racial, and homophobic rants, replete with demands for sex acts to be

---

[1] Compl., D.I. 1.
[2] *Id.*
[3] Def.'s Mot. Summ. J., D.I. 51.
[4] Pl.'s Ans. Br. at 1, D.I. 54.

2

performed on her male co-workers, including her immediate supervisor, all while constantly labeling her a 'Ni---r'"[5] The details she recites of that of that abuse, if true, and the Court has no reason to suspect they are not, fully support her characterization of it.[6] The Court has profound sympathy for Bateman and condemns in the strongest possible terms the behavior of those harassing and abusing her. It is truly disgusting. But, and unfortunately there is a but, that behavior is more relevant to the hostile work environment claim she has abandoned than it is to her surviving retaliation claim. The latter necessarily focuses more on DelDOT's responses to her complaints than it does on the harassment itself. It is DelDOT's motivation for terminating her that is at issue. In other words, this case is about whether DelDOT fired her for complaining about the abuse as she alleges, or whether she was fired for time and attendance fraud as DelDOT alleges. Whether she was abused or not is no longer the central issue.

After applying the requisite *McDonnell Douglas v. Green*[7] burden shifting analysis, the Court concludes that Bateman has failed to make out a *prima facie* case of retaliation. Further, even if she had made out such a case, DelDOT has proffered a non-discriminatory reason for taking adverse employment actions against her,

---

[5] Pl.'s Ans. Br. at 2, D.I. 54
[6] *Id.* 5-8.
[7] 411 U.S. 792 (1973).

because DelDOT terminated her for substantial time and attendance fraud. Finally, when the burden shifts back to Bateman, she fails to establish that DelDOT's nondiscriminatory reason was pretextual. Thus, DelDOT's motion for summary judgment is **GRANTED.**

## II.    FACTUAL AND PROCEDURAL HISTORY

On the remaining retaliation claim, DelDOT asserts that it is entitled to summary judgment because Bateman cannot establish a *prima facie* link between the only adverse actions she actually suffered - her suspension without pay and termination - and her complaints of a hostile work environment.[8] Further, DelDOT maintains that, even if Bateman could establish such a *prima facie* linkage, DelDOT had a legitimate, non-discriminatory reason for suspending her without pay and terminating her.[9] That reason, according to DelDOT, is that Bateman abandoned her post and committed time and attendance fraud.[10] Bateman argues that she has established a *prima facie* causal connection between the adverse actions DelDOT took against her and her discrimination complaints based to a demonstrated animus towards her by DelDOT and the timing of the adverse actions.[11] She also disputes the legitimacy of DelDOT's claimed non-discrimatory reasons for taking adverse

---

[8] *Id.* at 25-28.
[9] *Id.* at 28-29.
[10] *Id.*
[11] Pl.'s Ans. Br. at 27, D.I. 54.

4

actions against her, characterizing them as inconsistent and unworthy of belief.[12] In its Reply, DelDOT reiterates its contention that Bateman has failed to establish a *prima facie* causal link between her discrimination complaints and her discharge and that its reasons for terminating her employment were legitimate and non-discriminatory.[13]

Since both parties rely in part on the timing of Bateman's protected activity and DelDOT's adverse actions, it is helpful to review the chronology of certain events. The protected activities in which Bateman alleges she engaged were: (1) filing a Charge of Discrimination to DDOL and EEOC on November 19, 2015, which she signed on December 14, 2015;[14] and (2) complaining to DelDOT's EEO/AA officer on March 13, 2016 about an incident she alleged occurred on March 11th.[15] The parties agree that the termination of Bateman's employment was an adverse action. In her Amended Complaint, she alleges she was terminated on May 24, 2016.[16] Her Answering Brief, however, states, "The last day she worked for DelDOT was April 19, 2019 [sic], when she was terminated."[17] DelDOT describes the termination process with more detail. She was mailed a letter on April 20, 2016

---

[12] *Id.* at 30.
[13] Def.'s Reply Br., D.I. 56.
[14] Def.'s Reply Br. at 4, D.I. 56; Pl.'s Ans. Br. at 10, D.I. 54.
[15] Def.'s Op. Br. at 27, D.I. 49.
[16] Amend. Compl. at ¶16, D.I. 19.
[17] Def.'s Ans. Br. at 4, D.I. 54.

notifying her that she would be suspended with pay pending termination.[18] On May 20, 2016, DelDOT held a pre-termination hearing at which Bateman appeared with her union representative and offered evidence.[19] The conclusion of the hearing officer was that Bateman was found to have committed time and attendance fraud, resulting in her suspension with pay being converted to a suspension without pay.[20] Pursuant to her union's collective bargaining agreement with DelDOT, Bateman was given what is called a Step 3 Grievance Hearing on July 27, 2016.[21] Again, Bateman attended with union representation.[22] DelDOT contends that the hearing officer held that:

> [t]he video evidence shows you leaving the Winchester Bridge house and either returning hours later or not returning at all. In addition, your claim of walking, fishing or checking on other bridges cannot be substantiated, especially on the many occasions that you were seen leaving the Winchester Bridge House in the late evening during the winter months.[23]

Following the above citation to DelDOT's Appendix reveals that the above language comes from Secretary of Transportation Jennifer Cohan's August 8, 2016 letter to

---

[18] Def.'s Op. Br. at 10, D.I. 49.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 11.
[22] *Id.*
[23] *Id.*

Bateman terminating her immediately.[24] Whether that language originated with the hearing officer is unknown since neither party has supplied the Court with the hearing officer's decision.

Apart from the above mentioned milestones, other events are relevant to the Court's analysis. In response to Bateman's March 13th email complaint, DelDOT's EEOC/AA Officer forwarded the complaint to the Canal District Engineer ("CDE") for investigation.[25] On March 21st, the CDE obtained remote access videos in his office of the video camera on the 3rd Street Bridge[26] in order to attempt to view the March 11th incident about which Bateman complained in her March 13th email.[27] Because he could not hear the verbal exchange that was the basis of Bateman's complaint, the CDE deemed her complaint unsubstantiated.[28] The CDE was able to view a "live stream" or real time video of the 3rd Street Bridge on March 21st, however.[29] In reviewing the video of March 21st, the CDE observed that Bateman was absent from the bridge house for extended periods of time on three occasions,

---

[24] App. Def.'s Op. Br. at A-290, D.I. 50.
[25] Def.'s Op. Br. at 6, D.I. 49.
[26] The 3rd Street Bridge is more formally known as the Winchester Bridge.
[27] *Id.*
[28] *Id.* at 7.
[29] *Id.*

leaving the portable phone in the bridge house,[30] while arriving late and leaving before her shift was finished.[31] Her timesheet for that day reflected a full 16 hours of work.[32] As a result to this discovery, the CDE opened an investigation of all four bridge operators assigned to the 3rd Street Bridge by conducting a review of various random timeframes in the period between December 1, 2015 and March 31, 2016.[33] The results of that review showed that Bateman left the bridge house unattended, without taking the portable phone with her, for more than 171.5 hours.[34] She submitted timesheets and was paid for all of those hours.[35] Of the other bridge operators, one left the bridge unattended for 11.37 hours for which that operator received a 30-day suspension.[36] Another was late to work one day, and the fourth never left the bridge unattended.[37]

## III.  THE PARTIES' CONTENTIONS

In its Motion for Summary Judgment, DelDOT does not deny that Bateman engaged in a protected activity nor does it deny that she suffered an adverse

---

[30] The portable phone is the means by which the bridge operators are contacted when the bridge needs to be raised. It should be in the possession of the bridge operators at all times. Def.'s Op. Br. at 3-4, D.I. 49.

[31] *Id.* at 7-8.

[32] *Id.* at 8.

[33] *Id.* at 9.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 9-10.

[37] *Id.* at 10.

8

employment action.[38] DelDOT disputes, however, that there was a causal link between the claimed protected activity and the adverse employment action. It claims that Bateman, who was employed as a bridge operator at Wilmington's 3rd Street Bridge, was suspended without pay and subsequently terminated as a result of an investigation into all four bridge operators for time and attendance fraud.[39] That investigation, it states, was prompted solely by the discovery on March 21, 2016, while investigating Bateman's March 13th complaint, that the 3rd Street Bridge house was unattended for a significant period of time.[40] Further, DelDOT argues, even if a Bateman can establish a *prima facie* case of retaliation, it had a legitimate non-discriminatory basis for firing Bateman based on time and attendance fraud.[41]

In an effort to make out a *prima facie* case of retaliatory discrimination, Bateman alleges that she engaged in protected activity when she filed a formal Charge of Discrimination and retaliation with DDOL and the EEOC on December 14, 2015 and when she complained to DelDOT's labor relations manager on March 13, 2016; that she suffered an adverse employment action when she was

---

[38] DelDOT does dispute what action it took that constituted an adverse action, contending that Bateman's suspension <u>with</u> pay did not amount to an adverse action, and that only her suspension <u>without</u> pay and termination were adverse actions. Def.'s Op. Br. at 24, D.I. 49.

[39] Pl.'s Op. Br. at 26, D.I. 49.

[40] *Id.* at 6, 29.

[41] *Id.* at 28.

9

terminated;[42] and that a causal link exists between the protected activity and the adverse employment actions by virtue of their unusual temporal proximity and by DelDOT's demonstrated animus toward her.[43]

A causal link may be shown through an unusually suggestive temporal proximity alone, or through timing plus some pattern of antagonism in the intervening period between the protected activity and the adverse action if the employer knew of the employee's protected activity and acted with retaliatory motive.[44] Bateman alleges that she was fired "only weeks" after she complained to DelDOT's labor relations manager on March 13, 2016 and after having filed her discrimination charges the previous December. Bateman asserts that the timing of her termination should be considered in addition to a pattern of antagonism that she claims existed because of what she describes as DelDOT's mild discipline of the employees she claimed subjected her to a hostile work environment. DelDOT argues that the time between Bateman's protected activities and termination were too great to constitute a causal link. It claims Bateman cannot rely on temporal

---

[42] It is unclear exactly when Bateman alleges she was terminated. The Amended Complaint alleges that she was suspended on April 20, 2016 and terminated on May 24th. Amend. Compl. ¶¶ 15, 16, D.I. 19. Her Answering Brief states, "The last day she worked for DelDOT was April 19, 2019 [sic], when she was terminated." Pl.'s Ans. Br. at 4, D.I. 54.

[43] Ans. Br. at 27, D.I. 54.

[44] *Termonia v. Brandywine Sch. Dist.*, 2014 WL 1760317, at *1 (Del. Super. Ct. Apr. 16, 2014), aff'd, 108 A.3d 1226 (Del. 2015).

proximity alone to establish a *prima facie* case because there "was almost five months between her March protected activity and her termination and more than three months between Bateman's November/December 2015 Charge of Discrimination and her termination."[45] These dates are confusing. If, as DelDOT claims, Bateman was terminated on August 8, 2016,[46] then her complaint in March was five months prior to that date. If an adverse action occurred when her suspension was converted from with pay to without pay on May 24th, then the intervening time from her complaint to the adverse action was about two and one half months. Similarly, her "November/December 2015" Charge of Discrimination was eight or nine months prior to August, 2015 and five or six months prior to May.

## IV.   STANDARD OF REVIEW

Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if, when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[47] The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[48] If the moving party meets its burden, the burden shifts to the

---

[45] Defendant's Reply Br. at 5, D.I. 56.

[46] *Id.*

[47] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979).

[48] *Sizemore*, 405 A.2d at 681.

11

non-moving party to show that there are material issues of fact to be resolved by the ultimate fact-finder.[49] When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[50] Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact. When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[51] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[52]

In order to establish a retaliatory discharge claim, Bateman must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between elements (1) an (2).[53] It is well-settled that

---

[49] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[50] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).
[51] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-60, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[52] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[53] *Jacques-Scott v. Sears Holding Corp.*, 2013 WL 2897427 at *9 (D. Del. 2013).

12

Delaware courts have adopted the burden shifting framework set forth in *McDonnell Douglas v. Green* to analyze retaliation claims.[54] Under this framework, Bateman must first establish a *prima facie* case of retaliation. Bateman's burden in establishing a *prima facie* case "is not particularly onerous."[55] If she succeeds in establishing a *prima facie* case, the burden shifts to DelDOT to proffer "legitimate non-discriminatory" reasons for its actions.[56] In her Answering Brief, Bateman contends that under Delaware evidentiary rules, DelDOT must rebut the presumption in favor of retaliation by proving that the absence of retaliation is more probable than the existence of retaliation, as opposed to the federal rules, under which she contends that rebutting the presumption in favor of retaliation does not shift the burden of proof to DelDOT, only requiring DelDOT to meet the less onerous requirement of articulating a legitimate reason.[57] In other words, Bateman contends that Delaware requires an employer to meet a higher standard of proof in order to rebut the presumption of retaliation than required by federal law. DelDOT's position is that it only needs to articulate a non-discriminatory reason for the adverse action in order to meet its burden.[58] Nevertheless, if DelDOT meets this burden,

---

[54] 411 U.S. 792 (1973); *Miller v. State of Delaware, Dep't of Pub. Safety*, 2011 WL 1312286, at *12 (Del. Super.).

[55] *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008).

[56] *See, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

[57] Pl.'s Ans. Br. at 25-26 (citing D.R.E 301 and F.R.E. 301), D.I. 54.

[58] Def.'s Op. Br. at 24, D.I. 49.

13

whatever that burden is, the burden again shifts to Bateman to demonstrate, by preponderance of the evidence, that DelDOT's rationale is pretextual.[59] Pursuant to *Fuentes v. Perskie,* in order to demonstrate that DelDOT's rationale is pretextual, Bateman must "point to some evidence, direct or circumstantial from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating determinative cause of the employer's actions."[60] "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate employment action (that is the proffered reason is a pretext)."[61]

## V. DISCUSSION

### A. Bateman Fails to Establish a *Prima Facie* Case of Retaliation.

The Court's first task under *McDonnell Douglas* is to determine whether Bateman has met her initial burden of establishing a *prima facie* causal link between

---

[59] Pl.'s Ans. Br. at 42-43, D.I. 54.
[60] 32 F.3d 759, 764 (3d. Cir. 1994).
[61] *Harding v. Careerbuilder, LLC,* 168 Fed. Appx. 535, 537 (3d Cir.) (quoting *Fuentes,* 32 F.3d at 764).

14

the protected activity of her complaints of a hostile work environment and the adverse actions of her suspension without pay and subsequent termination.[62] She has not. Since Bateman relies, at least in part, on temporal considerations in attempting to establish her *prima facie* case, it is necessary to define when the protected activity occurred and when the adverse actions occurred. There is no real dispute that the protected activity occurred on two occasions – first, in November/December with her EEOC/DDOL Charge of discrimination; and second, on March 11th when Bateman complained to DelDOT's EEO/AA officer. Similarly, the Court finds that there were two adverse actions by DelDOT. The first occurred on May 20th when Bateman was suspended without pay, and not on April 20th when she was suspended with pay. It is well settled that a suspension with pay and full benefits pending an investigation into alleged misconduct is not an actionable adverse employment action.[63] The second adverse action was her termination on August 8th. At issue is the causal connection between the protected activity and the adverse actions.

---

[62] *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252 (1981).
[63] *Conley v. State,* 2011 WL 113201 (Del. Super.) (citing *Joseph v. Leavitt,* 465 F.3d 87, 91 (2d Cir. 2006); *Singletary v. Miss. Dep't of Corr.,* 423 F. 3d 886, 892 (8th Cir. 2005); *Peltier v. United States,* 388 F. 3d 984, 988 (6th Cir. 2004); *Gunten v. Maryland,* 243 F. 3d 859, 869 (4th Cir. 2001); *Breaux v. City of Garland,* 205 F. 3d 150, 158 (5th Cir. 2000)).

15

"To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[64] Here the shortest time between protected activity and adverse action is the time between Bateman's complaint to DelDOT's EEO/AA officer on March 11th and her suspension without pay on May 20th, a period of just over two months. The Third Circuit Court of Appeals in *Jones v. Southeastern Pa. Transp. Authority* observed that in order for temporal proximity alone to provide a causal link, that temporal proximity must be "unusually suggestive" of a retaliatory motive.[65] In *Jones,* the Court rejected Jones' argument that "a gap of nearly three months ... raises a red flag, especially when SEPTA spent those three months on a thorough investigation into her alleged malfeasance."[66] Here, while DelDOT's investigation of Bateman did not encompass the entire two plus months, a significant portion of that time was spent on "a thorough investigation into her alleged malfeasance." The remainder of the time was devoted to providing Bateman with her procedural rights. When viewed in that light, the Court finds that, standing alone,

---

[64] *Lauren v. DeFlaminis,* 480 F.2d 259, 267 (3d Cir. 2007).
[65] 796 F.3d 323, 331 (#d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997) (quoting *Robinson v. City of Pittsburg,* 120 F. 3d 1286, 1302 (3d Cir. 1997)).
[66] *Id.*

16

the temporal proximity of the protected activity to the adverse employment action is not "unusually suggestive" of retaliation.[67]

The other way in which Bateman might establish a causal link is by combining timing with a pattern of antagonism.[68] The relevant time frame for that combination of events is the intervening period between the protected activity and the adverse employment action.[69] Bateman spends much time detailing alleged antagonism outside of that period, but little inside of it. At most, it can be inferred that she is alleging that the investigation into her alleged time and attendance fraud demonstrates antagonism. But, as discussed *infra,* that inference is unwarranted. Accordingly, the Court finds that Bateman has failed to establish *prima facie* case of retaliation.

## B. DelDOT Proffers Legitimate Non-discriminatory Reasons for Adverse Actions.

Even if the Court were to assume for the purpose of argument that Bateman has made out a *prima facie* case of retaliation, under the *McDonnell Douglas* burden shifting framework, DelDOT has shown a "legitimate non-discriminatory" reason

---

[67] *See, Baker v. United defense Industries, Inc.*, 403 F. App'x. 751, 757-58 (3d Cir. 2010).

[68] *Lauren v. DeFlaminis* at 267.

[69] *Cole v. Delaware Technical and Community College,* 459 F. Supp. 2d 296, 306-07 (D. Del. 2006) (citing *Krause v. Am. Sterilizer Co.,* 126 F. 3d 494, 503-04 (3d Cir, 1997)).

for her termination. It the Court's view, DelDOT has made that showing even if the Court applies the quantum of proof Bateman suggests - a preponderance of the evidence. It goes without saying that time and attendance fraud is a legitimate, non-discriminatory basis for an employer to take adverse employment actions against an employee who engages in such behavior. Indeed, Bateman does not challenge that unremarkable observation. The CDE's investigation revealed that Bateman committed time and attendance fraud by submitting timesheets and being paid for 171.5 hours of unaccounted for time over a three month period. Based on DelDOT's letter dated April 20th, which includes a detailed spreadsheet of the results of the investigation, the Court calculates that approximately 30% (171.5 out of 592 hours) of Bateman's time during the period reviewed was unaccounted for.[70] At 40 hours per week, 171.5 hours is more than four weeks. These findings were upheld at both a pre-termination hearing and a Step 3 Grievance Hearing. Bateman attended both hearings with her union representative and presented evidence and arguments against her termination at each.[71] The Court finds that DelDOT has articulated a legitimate non-discriminatory rationale for taking adverse employment actions against Bateman.

**C. Bateman Fails to Demonstrate DelDOT's Rationale Is Pretextual.**

---

[70] App. Def.'s Op. Br. at A-95-98, D.I. 50.
[71] Def.'s Op. Br. at 10-11, D.I. 49.

Under *McDonnell Douglas,* the burden now returns to Bateman to establish that DelDOT's articulated rationale for taking adverse employment actions against her is a pretext for retaliation. Of the two options available to her under *Fuentes* - pointing to some evidence that a factfinder could either (1) disbelieve DelDOT's articulated legitimate reasons; or (2) believe that invidious discrimination was more likely the motivating determinative cause of DelDOT's actions – Bateman has opted to rely on the former approach.[72] She advance nine "inconsistencies" in DelDOT's arguments so as to make them unworthy of credence. The claimed inconsistences generally assert that the videos are either unreliable or incomplete, Bateman's March 11th complaint was "whitewashed," and that DelDOT ignored its own bridge and attendance policies.[73] None of these allegations bear up under examination. The claim that the videos do not accurately capture the substantial amounts of time when Bateman allegedly was away from her duty station is frivolous, especially when her original denial of ever leaving the bridge is juxtaposed with her later claims of justifiable or authorized departures. Additionally, the video evidence shows Bateman's absence from the bridge is an order of magnitude greater than any of her coworkers. Finally, it would be difficult, if not impossible, for a factfinder to disagree with the Secretary's conclusion that Bateman's explanation that she was

---

[72] Pl.'s Ans. Br. at 30-33, D.I. 54.
[73] *Id.* at 31-32.

19

fishing or going long walks during the winter months at night cannot be credited. Next. her argument that DelDOT "whitewashed" her March 11th complaint because it stated that it was "unsupported" while at the same time saying the incident "could not be heard" makes no sense. The reason it was unsupported was because it could not be heard. Finally, Bateman's claim that DelDOT ignored its own policies fails in light of the other three bridge operators' apparent adherence to them. Accordingly, Bateman has failed to produce evidence, direct or circumstantial, from which a factfinder could find that DelDOT's articulated legitimate reasons for taking adverse employment actions against her were unworthy of belief, and thus, pretextual.

## VI. CONCLUSION

Therefore, for the reasons set forth above, the State of Delaware Department of Transportation's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

20